UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-cv-81782-MARRA/MATTHEWMAN

KIM PETER TILLMAN,

    Plaintiff,

v.

ADVANCED PUBLIC SAFETY, INC.,
and TRIMBLE NAVIGATION, LTD.,

    Defendants.

_____/



## ORDER GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AS TO THE DEPOSITION OF TRIMBLE VICE PRESIDENT AND GENERAL COUNSEL JAMES KIRKLAND [DE 114]

THIS CAUSE is before the Court upon Defendants, Advanced Public Safety, Inc., and Trimble Navigation, LTD.'s ("Defendants") Motion for Protective Order as to Deposition of Trimble Vice President and General Counsel James Kirkland ("Motion") [DE 114]. This matter was referred to the undersigned by United States District Judge Kenneth A. Marra. *See* DE 37. Plaintiff, Kim Peter Tillman ("Plaintiff") has filed a Response [DE 116], and Defendants have filed a Reply [DE 117]. The Court held a hearing on the Motion on February 14, 2017. The matter is now ripe for review.

### I.    BACKGROUND

According to the Second Amended Complaint ("Complaint"), Plaintiff entered into an agreement to represent Defendant Advanced Public Safety, Inc. ("APS"), as a salesman and independent contractor in November 2002. [DE 102, ¶4]. While living in Iowa, Plaintiff sold software produced by APS to various law enforcement officials and Clerks of Court throughout

1

the country. *Id.* Defendant Trimble Navigation, Ltd. ("Trimble"), acquired APS in 2006, and Plaintiff worked as an independent contractor for Trimble. *Id.* at ¶5. In January 30, 2012, he began working as a W-2 employee for Trimble. *Id.* at ¶6. Plaintiff alleges he was unlawfully terminated on September 16, 2014, after he raised concerns regarding Defendants' unlawful business practices and unpaid commissions. *Id.* at ¶25. The Complaint alleges violation of Florida's Whistleblower Act, breach of contract, promissory estoppel, age discrimination, and retaliation in violation of 18 USC § 1514A(a). *Id.* at ¶¶30-83.

## II. MOTION, RESPONSE, AND REPLY

In their Motion, Defendants explain that James Kirkland is the vice president and general counsel of Trimble. [DE 114, p. 1]. Defendants state that Kirkland's office is in the corporate headquarters in California, and he had no day-to-day involvement with Plaintiff or APS. *Id.* They dispute that any evidence cited by Plaintiff actually supports Plaintiff's request for Kirkland's deposition. *Id.* at pp. 2-5. Defendants also argue that Plaintiff should have first attempted to depose Hal Marshall, the former senior human resources manager of APS, before attempting to depose Kirkland, but Plaintiff refused to do so. *Id.* at p. 5. Defendants contend that Kirkland's deposition is not necessary and is being sought to annoy and harass Kirkland and the Defendants. *Id.* Defendants also maintain that Kirkland's involvement in this matter is covered by the attorney-client privilege and/or the work-product doctrine, particularly given that he serves as general counsel as well as vice president for Trimble. *Id.* Lastly, Defendants argue that Plaintiff has not established that Kirkland has unique, non-repetitive, firsthand knowledge of the facts at issue or that other less intrusive means of discovery have been exhausted without success. *Id.* at pp. 7-9.

In response, Plaintiff concedes that a corporation's in-house counsel is typically protected from discovery by the attorney-client privilege, but that the circumstances here are unique in that Kirkland holds the positions of vice president, general counsel, and compliance officer. [DE 116, p. 1]. Plaintiff argues that an email drafted by Hal Marshall proves that Kirkland made the final decision to terminate Plaintiff. *Id.* He asserts that, due to his position as compliance officer, Kirkland also must have led the internal audit investigation after Plaintiff blew the whistle on Defendants' business practices. *Id.* Plaintiff contends that he needs to be able to depose Kirkland as Defendants have provided an inconsistent explanation regarding who made the decision to terminate Plaintiff. *Id.* at pp. 2-4. Plaintiff does not want to depose Hal Marshall because he wants to depose the decision-maker and not just the messenger who forwarded that decision to others. *Id.* at p. 4.

In his Response, Plaintiff next asserts that the deposition testimony of Kirkland would be used to oppose Defendants' motion for summary judgment by showing that Defendants' proffered legitimate non-discriminatory reason for Plaintiff's termination is pretextual. [DE 116, p. 5]. Plaintiff argues that Kirkland has unique, first-hand knowledge regarding his decision to terminate Plaintiff's employment and regarding his role as compliance officer over the internal audit. *Id.* at p. 7. He also contends that the information sought from Kirkland will not invade the attorney-client privilege because "the issue of Mr. Kirkland's personal involvement in the decision to terminate Mr. Tillman goes to the heart of this retaliation case and has been injected into this case from the documents produced and the defenses raised by Defendants." *Id.* Plaintiff argues he has substantial need for this information and that Kirkland's deposition testimony from actions he took as vice president or compliance officer would not be protected by the attorney-client privilege. *Id.* at p. 8.

3

In reply, Defendants assert that Hal Marshall's emails do not prove that Kirkland was the decision-maker about Plaintiff's termination and that only Marshall, who wrote the emails, can explain what the emails actually meant. [DE 117, p. 1]. Defendants explain that Bill Martin, the former general manager who testified as a corporate representative for APS and whose testimony was adopted in writing by Trimble, testified that Kirkland was not the decision-maker. *Id.* They assert that the information regarding Plaintiff's termination and Trimble's investigation into Plaintiff's whistleblowing could be obtained from Marshall's deposition. *Id.* at p. 3. Finally, they argue that the attorney-client privilege is not waived by defending a lawsuit. *Id.*

### III. <u>LEGAL ANALYSIS</u>

<u>General Standard for Protective Orders</u>

Under Rule 26(c)(1), "[a] party or any person from whom discovery is sought may move for a protective order ... to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party seeking a protective order must demonstrate "'good cause' for the protection sought." *Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1277 (S.D. Fla. 2008). "'Good cause' has been defined as a 'sound basis or legitimate need to take judicial action.'" *Id.* (quoting *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)).

<u>Plaintiff Failed to Meet the Requirements for Taking an Apex Deposition</u>

In this case, Plaintiff seeks to depose James Kirkland, who serves as the vice president, general counsel, and compliance officer of Trimble. The deposition of such a high-ranking corporate officer is commonly referred to as an apex deposition. *See Chick-Fil-A, Inc. v. CFT Development, LLC,* No. 5:07-cv-501-Oc-10GRJ, 2009 WL 928226, at *1 (M.D. Fla. Apr. 3, 2009). "Courts have generally restricted parties from deposing high-ranking officials because (by

4

virtue of their position) they 'are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.'" *Brown v. Branch Banking and Trust Co.*, No. 13–81192–CIV, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014) (citations omitted).

Therefore, "a party seeking to depose a high ranking corporate officer must first establish that the executive: (1) has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Hickey v. North Broward Hosp. Dist.*, No. 14–CV–60542, 2014 WL 7495780, at *2 (S.D.Fla. Dec. 17, 2014); *see also Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015). Moreover, the party seeking the deposition of the high-ranking official has the burden to show that the deposition is necessary. *Id.*

Here, Plaintiff has not established that Kirkland has unique, non-repetitive, firsthand knowledge of the facts at issue or that other less intrusive means of discovery, such as depositions of other former employees, have been exhausted without success. Plaintiff argues that two emails written by Hal Marshall, along with the deposition testimony of William Martin and Scott Mellett, support his request for Kirkland's deposition. However, the Court finds that Plaintiff's argument does not have merit.

Plaintiff first identifies two emails that he believes supports his position that the deposition of Kirkland is necessary. The first email from Hal Marshall to Bill Martin dated September 16, 2014, states "[g]ot the ok to term from Jim K. Working on it now…" [DE 116-1]. The second email from Hal Marshall to Scott Mellett and Bill Martin dated May 2, 2014, states as follows: "We should sit & discuss a strategy specifically for this territory, while we play the waiting game

per the attorneys. It may be that PT is re-deployed due to his inability to fairly and accurately represent the company." [DE 116-2].

The Court does not agree with Plaintiff's interpretation of the two emails. Plaintiff argues that they clearly show that Kirkland was the one who made the final decision to terminate Plaintiff, and Kirkland would, therefore, have unique firsthand knowledge regarding the termination of Plaintiff. However, the Court believes that the emails simply show that Kirkland was involved in his role as general counsel in making sure that the proper process had been followed before Plaintiff was ultimately terminated. The emails do not show that Kirkland was the decision-maker; rather, they show at best that Kirkland was providing legal counsel to the company as to the company's decision to terminate Plaintiff. If the Court allowed a deposition of Kirkland under such circumstances, then every general counsel could possibly be subject to similar harassing and unnecessary depositions which invade the attorney-client privilege.

With regard to the deposition testimony, Plaintiff contends that the testimony was inconsistent. Plaintiff explains that Bill Martin testified that the decision to terminate Plaintiff was made by Scott Mellett, but then Scott Mellett testified that he did not make the decision to terminate Plaintiff's employment and did not know who did make the decision. Plaintiff argues that there is an inconsistency in the evidence that can only be resolved by deposing Kirkland. However, the Court does not find that the above testimony is truly inconsistent. Moreover, there are other, less intrusive depositions that can be conducted by Plaintiff to obtain the information that he is seeking. Plaintiff has not established good cause for taking an apex deposition without first deposing Hal Marshall, the author of the emails at issue and the former senior human resources officer, who could possibly have additional information about Plaintiff's termination,


6

and Mark Adams, the author of the internal audit, who would have additional information about the internal audit.

### Plaintiff Failed to Meet the Requirement for Taking the Deposition of a Party's General Counsel

Since James Kirkland is also the general counsel for Trimble, Plaintiff's request to take his deposition causes additional concerns. The confidentiality of attorney-client privileged communications "is an interest traditionally deemed worthy of maximum legal protection." *Maharaj v. GEICO Cas. Co.*, 289 F.R.D. 666, 669 (S.D. Fla. 2013) (citing *State Farm Fla. Ins. Co. v. Puig*, 62 So.3d 23, 27 (Fla.Dist.Ct.App.2011)). "Federal courts ... have held that depositions of attorneys inherently constitute an invitation to harass the attorney and parties, and to disrupt and delay the case." *West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 301, 302 (S.D.Fla.1990). This is why a party seeking an attorney's deposition "must demonstrate that the deposition is the only practical means available of obtaining the information." *Id.* Moreover, the party seeking the deposition of an attorney has the burden to show "that the information sought 1) is relevant; 2) its need outweighs the dangers of deposing a party's attorney; and 3) the information sought will not invade the realm of the attorney's work product or interfere with the attorney-client privilege." *Klayman v. Freedom's Watch, Inc.*, No. 07–22433–CIV, 2007 WL 4414803, at *4 (S.D.Fla. Dec. 14, 2007) (citing *West Peninsular Title*, 132 F.R.D. at 302); *see also Sun Capital Partners, Inc.*, 310 F.R.D. at 528.

Here, Plaintiff has not demonstrated that the deposition of Kirkland is the only practical means available of obtaining the information he seeks as discussed above. Additionally, Plaintiff has not established that the information sought is relevant, that Plaintiff's need outweighs the dangers of deposing Kirkland, or that the information sought would not invade the realm of the

attorney-client privilege or work-product privilege. In fact, it seems clear that any testimony provided by Kirkland regarding his role as general counsel would most likely be protected by the attorney-client privilege and the work-product doctrine.

In sum, Defendants have established good cause for a protective order.[1] Defendants' Motion should, therefore, be granted. Based on the foregoing and on the argument and evidence presented,

it is hereby **ORDERED** that Defendants' Motion for Protective Order as to Deposition of Trimble Vice President and General Counsel James Kirkland [DE 114] is **GRANTED**.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 16th day of February, 2017.

WILLIAM MATTHEWMAN
United States Magistrate Judge

---

[1] While it was Plaintiff's burden to establish certain criteria before being permitted to take an apex deposition, which would also be a deposition of general counsel, Defendants had the ultimate burden to demonstrate good cause for a protective order and they have done so.